IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| BAPTKO, Inc., | ) | |
| | ) | Case No. 1:21-cv-00183-DMT-CRH |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **FOUNDATION AUTOMOTIVE CORP.'S** |
| | ) | **FIRST AMENDED ANSWER AND** |
| Foundation Automotive Corp., an Alberta | ) | **AFFIRMATIVE DEFENSES TO BAPTKO,** |
| Corporation; FA ND CHEV, LLC; and FA | ) | **INC.'S COMPLAINT, AND ITS JURY** |
| ND SUB, LLC, | ) | **DEMAND AND COUNTERCLAIM** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Foundation Automotive Corp. ("Foundation"), through its counsel, files its Answer and Affirmative Defenses to BAPTKO, Inc.'s ("BAPTKO") Complaint, and its Jury Demand and Counterclaim.

**PARTIES**

1. Foundation admits the allegations contained in Paragraph 1 of the Complaint.

2. Foundation admits that it maintains its corporate headquarters at Suite 520, 2424 4th Street SW, Calgary, Alberta, Canada T2S 2T4.

3. Foundation denies that Chuck Kramer, Jr. is a current member of FA ND CHEV, LLC ("FA ND CHEV"). Foundation admits the remaining allegations contained in Paragraph 3 of the Complaint. Foundation further admits that the Chevrolet dealership that is run under FA ND CHEV is located in Mandan, North Dakota.

4. Foundation admits the allegations contained in Paragraph 4 of the Complaint. Foundation further admits that the Subaru dealership that is run under FA ND SUB, LLC ("FA ND SUB") is located in Mandan, North Dakota.

**JURISDICTION AND VENUE**

5.      Foundation admits the allegations contained in Paragraph 5 of the Complaint.

6.      Foundation denies the allegations contained in Paragraph 6 of the Complaint.

7.      Foundation denies the allegations contained in Paragraph 7 of the Complaint.

**GENERAL ALLEGATIONS**

8.       Foundation admits that it entered into an Asset Purchase Agreement dated effective November 28, 2018 with Kupper Chevrolet, Inc. (herein, the "APA").  Foundation further admits that through Articles of Amendment filed with the North Dakota Secretary of State on July 11, 2019, Kupper Chevrolet, Inc. changed its name to BAPTKO, Inc. and, further, changed its principal address to 400 1st ST NE, Mandan, ND 58554.  Accordingly, Foundation will treat all references in this Complaint to BAPTKO as one and the same as Kupper Chevrolet, Inc.

9.      Foundation admits the allegations contained in Paragraph 9 of the Complaint.

10.     Foundation admits that the parties agreed to amend the APA through a document titled "First Amendment to Asset Purchase Agreement" (herein, the "First Amendment") dated effective January 27, 2019.  Foundation denies the remaining allegations contained in Paragraph 10 of the Complaint.

11.     Foundation admits that the terms of the APA, and the First Amendment, speak for themselves.  To the extent further response is necessary, Foundation denies any remaining allegations contained in Paragraph 11 of the Complaint.

12.     Foundation denies the allegations contained in Paragraph 12 of the Complaint.

13.     Foundation admits that it has not paid BAPTKO an earn out payment for 2020. Foundation denies the remaining allegations contained in Paragraph 13 of the Complaint.

14.     Foundation admits that it has retained the obligations and rights under the APA and the First Amendment associated with the earn out provisions described in the Complaint. Foundation denies that it assigned any obligations or rights under the APA with respect to the earn out provisions described in the Complaint to either FA ND CHEV, LLC or FA ND SUB, LLC. Foundation admits that its position on this issue is consistent with FA ND CHEV, LLC and FA ND SUB, LLC's arguments in this case in their motion to dismiss, and arguments these entities have made in the other identified litigation. To the extent further response is necessary, Foundation denies any remaining allegations contained in Paragraph 14 of the Complaint.

15.     Foundation admits that the provisions of Section 9.7 of the APA speak for themselves. To the extent further response is necessary, Foundation denies any remaining allegations contained in Paragraph 15 of the Complaint.

16.     Foundation denies the allegations contained in Paragraph 16 of the Complaint.

<u>**COUNT 1 - BREACH OF CONTRACT**</u>

17.     Foundation incorporates herein by reference all prior paragraphs of this Answer.

18.     Foundation denies the allegations contained in Paragraph 18 of the Complaint.

19.     Foundation denies the allegations contained in Paragraph 19 of the Complaint.

20.     Foundation denies the allegations contained in Paragraph 20 of the Complaint.

21.     Foundation denies the allegations contained in Paragraph 21 of the Complaint.

22.     Foundation denies the allegations contained in Paragraph 22 of the Complaint.

<u>**BAPTKO'S PRAYER FOR RELIEF**</u>

23.     To the extent response is necessary, Foundation denies any and all allegations and claims to rights to relief and damages contained in Paragraph 23 of the Complaint, including subparagraphs 1 - 4 thereunder.

## AFFIRMATIVE DEFENSES

1.      BAPTKO materially breached and/or substantially failed to perform its contractual obligations under the APA and applicable amendments, including the First Amendment, and on this basis Foundation's obligations to further perform under the APA are excused.

2.      BAPTKO has failed to state a claim upon which relief may be granted under North Dakota law.

3.      BAPTKO's claim for breach of contract is barred by the doctrines of estoppel and/or unclean hands.

4.      BAPTKO's claim is barred, or its claimed damages are reduced, by its failure to mitigate its claimed damages.

5.      BAPTKO's claim for breach of contract is barred for failure to meet or satisfy a condition precedent.

6.      Under the terms of the APA, Foundation is entitled to indemnification and/or setoff regarding any earnout BAPTKO may be entitled to under the APA as a result of Robert Kupper and/or BAPTKO's violations of the APA and agreements related to the APA.

## JURY DEMAND

Foundation Automotive Corp. hereby demands a jury trial under Fed. R. Civ. P. 38(b) on all claims, defenses, and issues so triable.

## COUNTERCLAIM

Foundation Automotive Corp. ("Foundation"), through its counsel, hereby files Counterclaims against BAPTKO, Inc. ("BAPTKO"). In support of its Counterclaim, Foundation alleges as follows:

### PARTIES

1. Foundation is a company incorporated in Alberta, Canada with a principal place of business in Canada.

2. FA ND CHEV, LLC ("FA ND CHEV") is a Delaware limited liability company, and its sole member is Foundation Auto Holdings, LLC ("Foundation Auto Holdings"), a Delaware limited liability company. Foundation Auto Holdings is 100% owned by Foundation Automotive U.S. Corp. ("Foundation U.S."), a company incorporated in Delaware with a principal place of business in Canada. Foundation U.S. is 100% wholly owned by Foundation.

3. FA ND SUB, LLC ("FA ND SUB") (together with FA ND CHEV, the "FA Entities") is a Delaware limited liability company, and its sole member is Foundation Auto Holdings.

4. BAPTKO is a company incorporated in North Dakota with a principal address at 400 1st ST NE, Mandan, North Dakota 58554.

### JURISDICTION AND VENUE

5. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(l) because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. Subject matter jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds $75,000.00,

exclusive of interest and costs, and involves citizens of states and citizens or subjects of a foreign state.

6.      This Court has personal jurisdiction over BAPTKO because it is a citizen of and does business within this State, has engaged in acts or omissions within this State causing injury, and has otherwise established contacts with this State making the exercise of personal jurisdiction proper.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(l) because BAPTKO is a resident of this State and District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because it is the District in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL BACKGROUND

### A.  *The Asset Purchase Transaction*

8.      On November 28, 2018, Foundation and Kupper Chevrolet, Inc. ("Kupper Chevrolet"), of which Robert Kupper ("Kupper") was the principal, executed an Asset Purchase Agreement (the "APA").  (Doc 3-1, APA, at *passim* & § 3.2(d).)

9.      Kupper Chevrolet later changed its name to BAPTKO through Articles of Amendment filed with the North Dakota Secretary of State on July 11, 2019.  Accordingly, for ease of reference herein, Foundation refers to Kupper Chevrolet as BAPTKO.

10.     Under the terms of the APA, BAPTKO agreed to sell, and Foundation agreed to purchase, substantially all of the assets of BAPTKO used or useful in the operations of Chevrolet and Subaru motor vehicle sales and service business (the "Dealerships") located at: (i) 1500 2nd Street NE, Mandan, North Dakota 58554; (ii) 805 East Main Street, Mandan, North Dakota 58554; (iii) 905 East Main Street, Mandan, North Dakota 58554; (iv) 1121 East Main Street, Mandan,

North Dakota 58554; and (v) 105 Mandan Avenue, Mandan, North Dakota 58554 (collectively the "Sites"), and as specifically described in the APA. (*Id.* at *passim.*)

11. Foundation and BAPTKO subsequently amended the APA on two occasions, first by a document titled "First Amendment to Asset Purchase Agreement" dated effective January 27, 2019 (the "First Amendment") (Doc. 3-2), and, further, by a document titled "Second Amendment to Asset Purchase Agreement" executed on May 31, 2019 (the "Second Amendment").

12. As part of the APA, BAPTKO agreed to sell, and Foundation agreed to purchase, the goodwill of BAPTKO and all associated intangible assets. (Doc. 3-1, APA, at § 1.1 & Schedule 1.1.)

13. In addition to BAPTKO receiving the price of the sale, Kupper individually executed the APA, but only as to Sections 5.13 (Non-Solicitation) and 5.14 (Confidentiality). (*Id.* at §§ 5.13 & 5.14, p. 30.) The Confidentiality provision required the parties to hold, in confidence, any and all information concerning the transactions contemplated within the APA. (*Id.* at § 5.14.)

14. Additionally, the APA contained certain representations and warranties from BAPTKO, including the following:

> Except as set forth in Schedule 4.1(y), since January 1, 2018, the Business of Seller has been conducted in the ordinary course and consistent with past practice. Except as set forth in Schedule 4.1(y), since January 1, 2018, Seller has not:
> . . . .
>
> (vi) ***made any material changes in the customary or historic methods of operations of Seller, including practices or policies relating to purchasing, maintaining inventories***, extending payables, accelerating receivables, marketing, selling and pricing[.]

(*Id.* at § 4.1(y) (emphasis added).)

15. In that same vein, the APA also contained a provision setting forth certain obligations of BAPTKO with respect to the pre-closing operations of the Dealerships:

> Between the Effective Date [November 28, 2018] and the Closing Date, Seller will (a) operate its business in the ordinary course; (b) *use its best efforts to preserve its Dealerships' operations* so that Buyer will obtain the benefits intended to be afforded by this Agreement; (c) not take or permit any action which would result in any representation or warranty of Seller becoming incorrect or untrue in any respect; (d) obtain the prior written approval of Buyer in connection with all material decisions affecting the business, operations, assets and liabilities of the Dealerships; and (e) notify Buyer in writing promptly after Seller becomes aware of the occurrence of any event that might result in any of Seller's statements, representations and warranties under this Agreement or any Related Agreement being or becoming untrue. *Seller shall keep all ratios, including, but not limited to inventory levels, in accordance with a 12-month rolling average.*

(*Id.* at § 5.2 (emphasis added).)

16.     Further, in Section 5.5(a) of the APA, BAPTKO agreed to pay on the Closing Date (as defined below) the unpaid bonus of each employee accrued as of the Closing Date.  Section 4.1(f) of the APA, in turn, required BAPTKO to disclose in Schedule 4.1(f) of the APA, among other things, each employee's applicable bonus schedule as of September 30, 2018.  BAPTKO also represented in Section 4.1(f) of the APA that the information provided as part of Schedule 4.1(f) was a true and complete list of all applicable bonus schedules.

17.     Similarly, Section 1.3 of the APA stated that except as set forth in the agreement, Foundation did not assume, or agree in any way to be "responsible or liable for, any liability, obligation, claim or expense of the Seller arising out of the operation of the Dealerships on or before the Closing Date, whether absolute, contingent, accrued, known or unknown," including any liabilities or obligations resulting from or arising out of "any accrued bonuses . . . of any Seller employee prior to the Closing Date."

18.     In reliance on BAPTKO's agreements, disclosures, and representations related to the employee bonuses, Foundation agreed that for a one-year period following the Closing Date, it or its affiliate would provide the Retained Employees (as defined below) with "an annual bonus

8

opportunity that [was] at least equal to the . . . bonus opportunity . . . that Seller provided to the Retained Employees immediately prior to the Closing." (*Id.* at § 5.5(d).)

19.     Finally, BAPTKO and Foundation agreed in the APA that Kupper would execute and deliver at the closing of the transaction a non-compete, non-solicitation, and no-hire agreement in the form attached as an exhibit thereto. (*Id.* at §§ 3.2(d) & 6.1(h), Ex. C.)

20.     Prior to the closing, Foundation assigned all of its rights and obligations under the APA relating to ***ownership and the operation*** of the subject dealerships, at the "Sites" outlined in the APA, to the FA Entities, which were specifically formed for that purpose. (*See* Doc. No. 3-3, Assignment and Assumption Agreement (Chevrolet), at §§ B-C & §§ 1-2; Doc. No. 3-4, Assignment and Assumption Agreement (Subaru), at §§ B-C and §§ 1-2.)

21.     On June 21, 2019, the date of closing of the asset purchase transaction (the "Closing Date"), the FA Entities exercised their right under the APA to hire the Dealerships' employees— approximately 192 employees in total (the "Retained Employees"). (Doc. 3-1, APA, at § 5.5.)

22.     Also on the Closing Date, Kupper and the FA Entities executed and entered into the Noncompetition and Nonsolicitation Agreement ("Non-Compete Agreement") as a material inducement to consummate the asset purchase transaction. (Doc. 33-1, Non-Compete Agreement, at § 2 (addressing material inducement).)

23.     In the Non-Compete Agreement, Kupper agreed, *inter alia*, that until January 31, 2022, he would not directly or indirectly (i) solicit the FA Entities' employees at the Dealerships or otherwise induce any of these employees to leave their jobs, (ii) hire any such employees, or (iii) own, consult for, or act as an agent for any "business located within a 93-mile radius of the Dealership Properties that operates as an automotive sales and service business," with a few exceptions. (*Id*. at § 2(a)-(b).)

24.     The no-hire and non-solicitation provisions in the Non-Compete Agreement state in relevant part:

> [T]he Individual [Kupper] agrees that the Individual shall not, directly or indirectly: . . . [f]or a period beginning on the . . . [Closing Date] and continuing through January 31, 2022, . . . (iii) solicit or otherwise induce to leave the employ of any Buyer or its affiliates who will own and operate the Dealerships following Closing [FA ND CHEV and FA ND SUB]; or (iv) hire any employees or associates from the current Sellers [BAPTKO] or from any Buyer or its affiliates who will own and operate the Dealerships following Closing unless approved by the Buyers. The provisions of this Section 2(b) shall not apply in the event a restricted employee independently approaches Individual for work outside of a radius of 93 miles from the Dealership Properties.

(*Id.* at § 2(b).)

25.     The Non-Compete Agreement is a "Related Agreement" in the APA, defined as "any other agreement or instrument executed by the Parties pursuant to [the APA]."  (Doc. 3-1, APA, at § 3.1.)  Further, BAPTKO represented and warranted to Foundation in the APA that "[t]his [APA] Agreement and the Related Agreements each constitutes the ***legal, valid and binding obligation of the Seller [BAPTKO]***, enforceable against Seller in accordance with their terms[.]" (*Id.* at § 4.1(b) (emphasis added).)

### B. BAPTKO and Kupper's Breaches of the Non-Compete Agreement

26.     Almost immediately after the closing, Kupper, both individually and as the principal of BAPTKO, began efforts to undermine and frustrate the business he and BAPTKO just sold, in violation of the Non-Compete Agreement.  Specifically, Kupper directly and/or indirectly solicited over a dozen of the FA Entities' employees, induced them to terminate their relationship with these entities, and/or induced them to accept employment with one of two local dealerships: Bismarck Motor Company ("BMC") and BMC Marine LLC d/b/a Moritz Sport & Marine ("Moritz Sport")—businesses and/or legal entities that Kupper affiliated with or owned.  These actions

10

constituted material breaches of Section 2(b) of the Non-Compete Agreement, which bound both Kupper and BAPTKO.

27.    As just one example, Kupper communicated with the FA Entities' general manager about possible employment with BMC, including specific job terms such as salary and vacation benefits—ostensibly before the general manager ever spoke with anyone else at BMC about a job. Kupper then set up a three-way call a few hours later between himself, the general manager, and BMC's dealer principal to further discuss employment with BMC.  Just hours after those two calls, the general manager had resigned from the FA Entities to work for BMC.  That is, Kupper was clearly involved in recruiting and hiring the FA Entities' general manager to work for BMC.

28.    As another example, Kupper told an FA ND CHEV employee that he would pay her a cash bribe if she sent him the FA Entities' employee lists, and hours earlier, he texted with a colleague about an apparent plan for BMC to own a Chevrolet store.

29.    BAPTKO and Kupper also materially breached Section 2(a) of Non-Compete Agreement, because Kupper continued to exercise meaningful control over BMC in certain important respects after he sold his interest in BMC, including by continuing to purchase used vehicles for BMC and engage in recruiting and hiring decisions for the company.

### C.  BAPTKO and Kupper's Breaches of the APA

30.    BAPTKO materially breached Sections 4.1(y) and 5.2 of the APA by not ordering new inventory (*i.e.*, by turning down allocations from General Motors) for the Dealerships in the months leading up to the Closing Date.  That is, BAPTKO failed to maintain inventory levels in accordance with a 12-month rolling average, as required by the APA, which led to significantly low inventory for the FA Entities after the Closing Date. In this regard, BAPTKO's conduct handicapped the FA Entities' ability to do business, forcing them to operate the newly acquired

11

dealerships, and in particular the Chevrolet store, with new car inventory at nearly half of BAPTKO's historical inventory levels. To date, new car inventory for FA ND CHEV remains below the BAPTKO historical inventory levels, due primarily to BAPTKO turning down allocation in the months prior to the Closing Date. As a result of these breaches, the FA Entities and their parent company, Foundation, suffered significant damages.

31.     Further, BAPTKO materially breached the APA by not disclosing the applicable bonus schedules in compliance with Section 4.1(f), or paying the employee bonuses that had accrued as of the Closing Date, pursuant to Sections 1.3 and 5.5(a) of the APA. The FA Entities and Foundation were only made aware of the employee bonuses months after the Closing Date when certain employees asked management when they would receive their bonuses. The bonuses that the FA Entities and Foundation identified which BAPTKO was obligated to disclose in the APA and pay on the Closing Date total $183,500.

32.     BAPTKO also breached the Confidentiality provision in the APA by disclosing confidential details about the asset purchase transaction to others. Foundation and the FA Entities have recently learned that a few days after the Closing Date, Kupper—both individually and as the principal of BAPTKO—disclosed highly confidential information regarding the specific economic and financial terms of the transaction, including the APA's funds flow memorandum and purchase price allocation, to Chris Schneider, one of the owners of Moritz Sport and the dealer principal of BMC, a car dealership located in Bismarck, North Dakota, and a business in which Kupper had an ownership interest.

33.     Further, Kupper—both individually and as the principal of BAPTKO—disclosed portions of the APA, including Section 5.5 (Employees and Employee Benefits) to certain employees of the FA Entities, and discussed with these employees his misinterpretation of these

12

contractual provisions, which both interfered with the FA Entities' relationships with its employees and otherwise caused them and Foundation to suffer damages.

### D. Foundation's Request for Indemnity

34.     In light of the above-discussed breaches of the APA and Non-Compete Agreement, on September 13, 2022 Foundation and the FA Entities sent BAPTKO a formal notice of losses and demand for indemnification, pursuant to the terms of the APA. With respect to indemnification obligations, the APA provides in relevant part:

> (a) Seller will indemnify, defend and hold Buyer, [and] its Affiliates (as defined below) . . . (the "Buyer Indemnified Parties") harmless from and against any and all claims, judgments, damages, penalties, fines, costs, liabilities, losses or expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by the Buyer Indemnified Parties (collectively, "Losses") arising from or directly or indirectly relating to:
>
> > (i) any breach or non-fulfillment by Seller of any term, covenant or provision of this Agreement or any Related Agreement, including, but not limited to, any representation and warranty set forth in Section 4. 1 of this Agreement; [or]
> > . . . .
> >
> > (iii) Seller's operation of the Dealerships prior to the Closing Date, including, but not limited to, Seller's Obligations (as defined in Section 1.3), . . . and any liabilities to employees of the Dealerships that arise as a result of actions of Seller prior to the Closing Date.
>
> "Affiliate" of any Person (as hereinafter defined) means any Person that controls, is controlled by or is under common control with such Person, together with its and their respective members, partners, venturers, directors, officers, stockholders, agents, employees and spouses. . . .

(Doc. 3-1, APA, at § 5.3.)

35.     In their letter, Foundation and the FA Entities advised that they estimated their current Losses exceeded the "Cap," as defined under Section 5.3(e) of the APA, and therefore, the amount that they sought to have BAPTKO indemnify was $3,000,000, per Section 5.3(e).

36.     On September 21, 2022, BAPTKO rejected the demand for indemnification and set-off.

37.     Section 5.3(d) of the APA provides that the prevailing party in a dispute related to a request for indemnification is entitled to recover from the non-prevailing party reasonable attorneys' fees incurred in any proceeding instituted to resolve such dispute, as well as the reasonable fees of any escrow agent.

## CAUSE OF ACTION

### (Breach of Contracts)

38.     Foundation incorporates by this reference the contents of Paragraphs 1-37 set forth above.

39.     The APA is a valid contract between Foundation and BAPTKO.

40.     Further, the Non-Compete Agreement is a valid contract with BAPTKO that is enforceable by Foundation.  In the APA, BAPTKO represented and warranted to Foundation that "[t]his [APA] Agreement and the Related Agreements," including the Non-Compete Agreement, "each constitutes the legal, valid and binding obligation of the Seller [BAPTKO], enforceable against Seller in accordance with their terms[.]"  (*Id*. at § 4.1(b).)

41.     BAPTKO breached the non-solicitation and no-hire restrictive covenants in the Non-Compete Agreement as a result of Kupper directly and indirectly soliciting the FA Entities' employees, inducing them to quit their jobs, and/or hiring them to work for BMC and/or Moritz Sport.  Further, BAPTKO breached the non-compete restrictive covenant, because Kupper exercised meaningful control over BMC by continuing to purchase used vehicles for BMC and engaging in recruiting and hiring decisions for the company after he sold his ownership interest in BMC.

14

42. Further, BAPTKO breached the APA by (1) failing to maintain inventory levels in accordance with a 12-month rolling average during the period between the effective date of the APA and Closing Date, and otherwise materially changing the customary or historic operational methods relating to maintaining inventories during this timeframe, and (2) failing to disclose the applicable bonus schedules in compliance with Section 4.1(f) of the APA, or pay the accrued employee bonuses on the Closing Date.

43. In addition, BAPTKO breached the APA by disclosing confidential details about the asset purchase transaction to others, as set forth above and herein.

44. As a result of BAPTKO's material breaches of the contracts, Foundation has suffered damages in an amount to be determined at trial.

45. Foundation is also entitled to an award of attorneys' fees and costs incurred to enforce the Non-Compete Agreement and APA, as provided for under Section 9.7 of the APA. In addition, Foundation is entitled to an award of attorneys' fees and costs related to the dispute pertaining to its request for indemnification, pursuant to Section 5.3 of the APA.

**PRAYER FOR RELIEF**

WHEREFORE, Foundation requests that this Court enter judgment in its favor and against BAPTKO as follows:

A. Damages in an amount to be determined at trial;

B. Costs, expenses, and reasonable attorneys' fees as permitted by law;

C. Pre- and post-judgment interest at the maximum rate allowable by law; and

D. Such other and further relief as may be appropriate.

15

Dated this 21st day of October, 2022.

Respectfully submitted,


*/s/ Anna S. Day*
Maxwell N. Shaffer (*Pro Hac Vice*)
Anna S. Day (*Pro Hac Vice)*
Kensye N. Wood (*Pro Hac Vice*)
HOLLAND & KNIGHT LLP
1801 California Street, Suite 5000
Denver, Colorado 80202
(303) 974-6660
Maxwell.Shaffer@hklaw.com
Anna.Day@hklaw.com
Kensye.Wood@hklaw.com

Robin Wade Forward, ND Bar #05324
STINSON LLP
424 South Third Street, Suite 206
Bismarck, North Dakota 58504
(701) 221-8600
rob.forward@stinson.com

*Attorneys for Foundation Automotive Corp.*